GULF & S. I. R. Co. *v.* PRINE ET AL.

[79 South. 62, Division B.]

1. COURTS. *Jurisdiction. Federal questions.*
    The state courts have jurisdiction of actions for the death of soldiers of the Mississippi National Guard caused by the negligence of a railroad company.

2. RAILROADS. *Injuries to persons.   Question for jury.*
    Notwithstanding Code 1906, section 1985 (Hemingway's Code, section 1645), making railroads *prima-facie* negligent where a party is killed by a running train, under the facts as set out in its opinion the court held in this case that the question of negligence of the railroad was for the jury.

3. TRIAL. *Peremptory instruction.*
  The rule in giving a peremptory instruction is that conceding all the facts to be true which the testimony tends to establish, and drawing all inferences favorable to the other party which may be drawn logically from the testimony, there is no defense made, or nothing to be submitted to the jury.

APPEAL from the circuit court of Covington county. HON. W. H. HUGHES, Judge.

Suit by Mrs. Laura Prine and others against the Gulf & Ship Island Railroad Company. From a judgment for plaintiffs, defendant appeals.

The facts are fully stated in the opinion of the court.

*B. E. Eaton* and *T. J. Wills,* for appellant.

The deceased at the time he met his death was a private in the United States Army. He was engaged in an active duty, growing out of warfare at a time when the government was at war.

Appellant is a common carrier. The federal government had assumed control of the railroad to the extent of guarding the vulnerable points on the line as a war measure. It had placed deceased as a private in its army, at Brooklyn Bridge to guard a bridge as a means of commerce and an' agency useful to the government. Its powers and rights over the railroad and deceased were paramount to all government powers vested in the state. The *status* of each is determined by the laws of the United States and not those of the state.

The *status* of both deceased and appellant under the circumstances is thus announced in Corpus Juris: "In this country a double citizenship exists, for the term applies both to membership in the nation considered as a whole and to membership in the state in which the individual may reside. The citizens of the United States resident within any state are subject to two governments, one state and the other national. Every

citizen owes allegiance to both governments, and within their respective spheres, must be obedient to the laws of each. In return he is entitled to demand protection from each within its own jurisdiction. There is a clear distinction between national citizenship and state citizenship, and this distinction is important in determining the respective rights, privileges, and immunities, pertaining to each citizenship." 11 C. J., page 776.

It was said by Chief Justice WAITE in the case of the *United States* v. *Cruikshand et al.,* 92 U. S. 542, at page 549: "We have in our political system a government of the United States and a government of each of the several states. Each one of these governments is distinct from the others, and each has citizens of its own who owe it allegiance, and whose rights within its jurisdiction, it must protect. The same person may be at the same time a citizen of the United States and a citizen of a state, but his rights of citizenship under one of these governments will be different from those he has under the other."

The states have delegated to the National Government exclusive power and right to declare war. Federal Const. art. 1 sec. 8, cl. 11. The states are prohibited from engaging in war without the consent of Congress. Federal Const., art. 1, section 10, cl. 3.

The states may exercise powers and they may control persons and property within their territory over which the federal government has control, as long as the National Government does not exercise the powers and functions of control. When the National Government assumes control, its powers are paramount and exclusive to that of the state. *In re Quarrels,* 158 U. S. 532; *Second Liability Cases,* 233 U. S. 1; *Seaboard A. L. R.* v. *Horton,* 233 U. S. 292.

The United States on April 6, 1917, recognized that a state of war existed between this country and Germany. The deceased Prine was a private in the United States Army, his *status* as a soldier in a time of war is fixed by the National Government. Appellant railroad is a' common carrier over which the National Government could and did exercise paramount supervision and control in assigning Prine to his duty in respect thereto. As a war measure the government enlarged its usual supervision, exercised in peace times, by assuming control, protection, and preservation of the line against attack or destruction. It guarded the bridge with its army. The deceased Prine was a member of that army guarding that bridge under the rules and regulations, therefore, of the paramount sovereign to which, as citizens, each owed allegiance.

The *status* of each was fixed and determined by the laws of the United States. Under the conditions and circumstances in which these parties were placed, their *status* was fixed by the military law or the law of federal relations. In times of war the Civil power is temporarily suspended. *Dow* v. *Johnson,* 100 U. S. 168.

The *status* being fixed by the laws of the United States the rights, duties, and liabilities must be interpreted, and enforced according to those laws which the state court cannot administer.

There can be no recovery for another reason, even if Prine was killed in the act of performing his duty, though the actual control and operation of appellant had not been assumed by the federal government when Prine was killed, yet now that the government assumed control, the court takes judicial notice of the acts of the federal government whenever they occur, to render a judgment against appellant is to render judgment against the federal government for the death of a soldier killed in the performance of

his duties as such.· If a judgment is rendered, it must be paid by the government in accordance with the proclamation of the President, taking over the railroads of December 27, 1917,. and the acts of Congress of March 21, 1918.

So that even admitting that Prine was negligently killed by appellant, there would be imposed upon the government a liability for placing a soldier where he was negligently killed when all must admit· there is no liability if he be placed by the government in a place where he is wilfully killed, that is, on a battlefield confronting an enemy. In other words the government must compensate his heirs for his death by the negligence of an agency for which the government is responsible, when on the battlefield of France, if put there to combat the enemy and killed by the. enemy, there is no liability.

It is clear not only that aside from any other question in the case there can be no recovery for the reasons discussed but also that the state court has no jurisdiction whatever since the state court is without power to determine military relationships and kindred questions and is without power to adjudicate the liabilities of the federal government to its soldiers. These· are either for military. or federal tribunals; most likely for congressional legislation.

The plaintiff relied upon the presumption raised by section 1985 of the Code, to make out a case and support a recovery. Their proof went further, however, and showed the conditions and circumstances which surrounded the deceased just prior to the. time of his death. It showed that his post of duty was on the ground and that he was a trespasser when he went upon the track.· Plaintiff's testimony showed further that the deceased was not on the track in front of the approaching train, within the vision of guards who were guarding at post No. 1, and post No. 2.

If he was on the bridge, he was so concealed that he was not visible. This testimony exonerates the railroad company from blame.

Under the proven facts and circumstances in this case there can be but one of two conclusions drawn as to the manner in which the deceased met his death, if killed by the train. First: That he was on the bridge in front of the moving train, so concealed that it was impossible for the guards in front of the train and the engineer and fireman on the engine to see him. Second: That he was beside the track in the vicinity of the bridge, and caught the moving train and lost his hold, and fell beneath the cars.

The conditions and circumstances surrounding deceased and appellant's train and crew, as shown by the testimony in this case will permit of no other conclusion being reached. Either conclusion exonerates appellant from the charge of negligence and entitled it to a peremptory instruction.

This court has said that the statutory presumption can not be overthrown by conjectures. The circumstances of the accident must be clearly shown, and if so proven, must exonerate the company from blame. In the Hunnicut case, this court stated: "In the outset we will state that to do this is not absolutely necessary, as has been intimated, or suggested in the record, that an eye witness should be produced to testify that he saw the accident in any or all its details; but that fact may be proven by the circumstances. In other words, the *prima-facie* presumption created by the statute can be over-come by the circumstantial evidence, but it should be convincing, full, and complete." *A. G. S. R. Co.* v. *Hunnicut,* 53 So. 617, 98 Miss. 272.

In the case at bar, the deceased was stationed on the ground. He left his post of duty when he went in the pathway of the train. The engineer and fire-

man testified that they were on the lookout expecting to find soldiers at this bridge. They did see Green at post No. 2, and Wright at post No. 1, but did not see deceased on the bridge. They were corroborated in this testimony by the testimony of both Green and Wright. These facts if true, taken in connection with the circumstances and conditions in which the parties were placed, relieved the appellant railroad company from all presumptions of negligence or want of due care. If deceased was on the bridge and was concealed so that he could not be seen by the engineer and fireman, could not be seen by the guards, Green and Wright, and was struck by the passing train, the presumption of negligence raised by the statute yields to the proof.

The presumption is overthrown, and the railroad exonerated from blame, and therefore relieved from liability. If he was not struck by the engine but came in contact with the train behind the engine, by accident or design, in attempting to board the train or otherwise, and unfortunately lost his life, the railroad company was guilty of no negligence whatsoever, and should be exonerated from liability.

The rules announced in the Hunnicut case have been several times since quoted by this court with approval. In the Fuller case the court said: "Positive evidence as to the time when plaintiff was first seen and as to the skill and diligence used thereafter to avoid injury, is not indispensible. These facts may be proved by circumstances and inferences to be drawn by the jury, in applying common observation and experience, to whom the question was submitted." *Fuller* v. *I. C. R. R. Co.*, 56 So. 783; See also: *N. C. M. & C. Co.*, v. *Cole*, 57 So. 557; *A. & V. R. R. Co.* v. *Thornhill*, 63 So. 674; *A. G. S. & Co.* v. *Daniel*, 66 So. 730.

*E. L. & A. W. Dent,* for appellees.

Laws relative to government and control of railroads not applicable to this case.  We submit that the statements and arguments of counsel that the fact that Prine was a soldier under the military law of the state and the Nation, guarding railroad property, in no way affect or bars the right of recovery of appellees.  It is just as much a violation of the laws of the land to negligently kill a soldier as it is a private citizen.  On April 25, 1917, the time Prine was killed, the government had not taken over and was not operating, in any sense, the appellant's property for war purposes or any other purpose. Possession and control of railroads and railroad properties were not assumed by the Government of the United States until December 31, 1917, some six or eight months after Prine was killed.  Therefore even if Government operation and supervision should affect the rights of litigants, this will only extend to the time the Government took possession and control of them and not before.

The act of Congress approved March 21, 1918, entitled, an Act to provide for the operation of transportation systems while under federal control, provides (section 10): ''That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or with any order of the president.'' We therefore submit that no act of Congress or the President of the United States in any way affects the appellee's right to recover herein.  Appellant's counsel cite no authorities to sustain their contention.

118 Miss.—7

Prine killed by running train and death unexplained.

The undisputed evidence in this case shows conclusively that the injury to, and death of, the decedent was inflicted by the running of a locomotive and cars of the appellant. This is admitted in the pleadings of appellant and its witnesses testify that when they arrived at Hattiesburg that they were advised that they had struck and killed a man on Brooklyn Bridge. This being true, the burden was upon it to explain the injury and death, and show how it occurred. This was not done. The death having been caused by the running of a locomotive and cars of appellant, the statute, section 1985, Code 1906, as amended by chapter 204, Laws 1912, page 290, was applicable and this made a *prima-facie* case of negligence against the appellees. *Company* v. *Thornhill*, 106 Miss. 411, 63 So. 679; *Mississippi Central Railroad Company* v. *Robinson*, 106 Miss. 896, 64 So. 838.

There is not a word of evidence in this case to show what Prine was doing when he was run over and killed by appellant. Three of the train's crew of appellant were placed on the stand and they say that they knew absolutely nothing about how Prine was killed and did not know that he had been run over and killed till they arrived at Hattiesburg, and then they refreshed their memories as to what they were doing when they crossed Brooklyn Bridge, when they were running twenty-five or thirty miles per hour. The statute invoked cannot be overcome merely by showing that parties were at their posts. *Yazoo & Mississippi Valley Railroad Company* v. *Mullins*, 115 Miss. 344.

In the case of *Y. & M. V. R. R. Company* v. *Phillips*, 63 Miss. 683, this court said: "Whenever a person or thing is struck or injured by locomotives or cars, the statute applies. That is its language, and

we cannot limit it so as not to include all cases embraced by its terms.''

This court, in the case of *Railroad Company* v. Brooks, 85 Miss. 269, said: ''It was shown beyond peradventure that the injury was inflicted by the running of the train. This is *prima-facie* proof of negligence authorizing a recovery by the plaintiffs.''

In the case of *Railroad Company* v. *Landrum,* 89 Miss. 399, this court said: ''Since the evidence clearly showed that Landrum was killed by the running of the cars, the statute imposed upon this railroad company liability, unless the railroad company met the burden imposed by the statute, and showed clearly the facts attending the injury, and by such showing exonerated itself from blame.'' Proof of injury creates presumption of liability. This presumption cannot be overcome by conjecture, but it rests upon the defendant to exculpate itself by showing exactly the facts and circumstances of the accident, and circumstances so proven must exonerate the defendant from blame. *V. & M. Railroad Company* v. *Hammon,* 56 So. 503; *Railroad Company* v. *Brooks,* 85 Miss. 269; *Easley* v. *A. G. S. Railroad Company* v. *Hunnicut,* 50 So. 419; *A. G. S. Railroad Company* v. *Hunnicut,* 53 So. 617; *R. R. Co.* v. *Brooks,* 85 Miss. 269.''

It was the appellant's duty to clear up the situation and we respectfully submit that it did not meet the burden of liability imposed by law and clear up the situation.

ETHRIDGE, J., delivered the opinion of the court.

This is an appeal by the Gulf & Ship Island Railroad Company from a judgment against it for thirty thousand dollars in favor of the appellees for the death of Thomas Grafton Prine, a son of Laura Prine and brother of the other appellees. Thomas Grafton Prine

was a private soldier in the First Regiment Mississippi
National Guard, being at the time in the service of the
United States government and being assigned to duty
as a guard over Brooklyn Bridge on the Gulf & Ship
Island Railroad in this state. The death of Prine
occurred about 2:30 a. m. on or about the 25th day of
May, 1917.

It appears that a squad of men under a sergeant and
corporal was assigned to duty at Brooklyn Bridge to
guard the bridge to prevent injuries from either alien
enemies or their friends and sympathizers, and that
three posts or guards along the trestle and bridge in
question were established, a guard having a post in the
section of the bridge and trestle to guard, and there
given a beat or place to patrol. About thirty minutes
before the injury the corporal in charge of the squad
went upon the bridge and called to young Prine, who
was then on duty, and Prine went to where the corporal
was, and they had some conversation, and the corporal
went away, leaving Prine upon the bridge or trestle near
the span of the bridge, which was the last time that
Prine was seen by the corporal.

One of the other soldiers on duty testified that shortly
after the corporal left Prine he saw him strike a match
and light a cigarette. This was some twenty minutes
before the train passed which killed Prine.

In approaching the bridge the train which killed Prine
came around a curve some one thousand two hundred
yards south of the bridge, and the train was equipped
with a powerful electric headlight. The soldiers on du-
ty testified that the train in approaching did not blow
the whistle or ring the bell. That there was a sign-
board some six hundred yards south of the bridge mark-
ed "W," which was designed as a whistling board, and
that the engineer did not blow the whistle or ring the
bell in approaching. A private soldier, stationed on du-
ty north of the bridge, states that when the engine came

around the curve and was approaching, he looked down
the track from the north of the bridge, and did not see
Prine on the bridge.   On cross-examination he states
that the light from the headlight was blinding, and it
was possible for Prine to have been on the bridge or
trestle without his seeing him.   He testified that when
the engine got opposite him at his post of duty he
heard a grinding sound as though the engine was crushing
or grinding something on the track, and as the caboose
passed him he heard something fall into the river or
creek under the bridge, and that he called to Private
Prine, but got no response, and then called the corporal
of the guard, and they made an investigation and found
the remains of Prine scattered along the railroad, one
of his arms being severed and falling into the creek.
The first indication of blood upon the track was some
twelve feet south of the steel span of the bridge upon
the trestle, and that Prine's hat was south of where signs
of blood were seen; that the gun of Prine was broken
and his head was cut off, both arms severed, and part
of his body was along the track near where this soldier
was stationed, being cut in two.   In other words, the
physical facts showed that Prine was struck south of the
trestle, and that his body was carried along the
track across the trestle to the north side thereof and
was mutilated.

It is further testified for the plaintiff that the engineer
had been approached by the corporal of the guard a
few days prior to the injury, and requested to give
signals on approaching the bridge so that the soldiers
could extricate themselves from a position of danger,
and that the engineer refused to give such signals, stating
it was not his duty to give signals, that it was the
duty of the soldier to stay out of a place of danger,
and off the track when the trains were approaching.

The engineer testified that, on approaching the bridge,
as he came out of the curve south of the bridge, he

sounded his whistle by giving a long blast, and that the conductor or some one in the caboose gave him the high ball or go ahead signal, and that he answered this signal with two short blasts of the whistle, and the bell was kept ringing until the bridge was crossed, that his train was in good condition, the headlight burning brightly, and that he was keeping a close lookout because on a former occasion a soldier had been killed at this bridge, and that he knew the soldiers were there, and on several occasions had seen them asleep on post of duty, and that on one occasion he had stopped his train to prevent injury to a soldier on duty. He denied he had been approached and requested to give signals on approaching the bridge, and denied the conversation alleged to have been had between him and the corporal. He testified he could see the bridge, and that Prine was not upon the track and not run over by his engine. He testified that his first knowledge of Prine being killed was when he reached Hattiesburg some distance above Brooklyn, when it was reported that a soldier had been killed at the bridge, whereupon he inspected his engine, and there were no signs of blood upon any part of his engine. He did not inspect his cars attached to his engine, but testified that, if there had been blood on the wheels of his engine, if they had run over a person or animal, when he applied his brakes, heat would be generated, and the flesh and blood on the wheels would burn, giving forth an offensive odor, by which he could always tell whether he had run over a person or animal, and on this trip there had been no scent by which he could tell that there had been any person or animal run over by the engine.

No person saw Prine at the time he was injured, and the fireman corroborated the engineer, saying he was on the lookout himself, and that he did not see Prine, and that he could see the track clearly, and that Prine was not upon the track when the engine passed. He

also says he was ringing the bell from the curve on to the bridge, and that the headlight was burning brightly, and he could see the track from the curve to the bridge, and that there was no person on it.

The conductor testified that the signals were given as testified by the engineer, and that he gave him the go ahead signal, as no stop was to be made at Brooklyn that night.

It appears in the testimony of the corporal and sergeant that Prine had a right to go upon the trestle or bridge in his duties, and that no order was given prohibiting him from doing so.

It is also testified by Maj. Hogaboom that Prine had no right to go upon the bridge without an order from the corporal or officer of the bridge to do so; that his post was below the bridge, and that he would be violating military law to go upon the bridge without an order; that if he saw any person upon the bridge or near it, it would be his duty to call the corporal of the guard; and that under no circumstances would he have a right to go upon the bridge without an order so to do. Maj. Hogaboom says there was no written order, and that he was not present with the guard at the time of the injury.

The proof shows that Prine was a young man in military service, a private soldier getting thirty dollars per month, of which he contributed twenty dollars per month to his mother and brothers and sisters.

Upon this evidence the court below granted a peremptory instruction to find for the plaintiff in the following words:

"The court charges the jury to find for the plaintiffs in this case, and it shall be your duty as jurors to award such damages as the jury may determine from the evidence to be just, taking into consideration all damages of every kind to any and all parties interested in this suit, as shown by the evidence. The exact

amount of such damages cannot be proven in dollars and cents, but the amount of the same is largely in your discretion to be determined from the evidence, and in fixing the amount you ought to be governed by the application of that sense of justice and right as the evidence in the case should warrant, and return your verdict for such an amount as you shall determine from the evidence to be just, not to exceed the amount sued for, to wit, fifty thousand dollars.''

It is assigned for error, and insisted: First, that the state court did not have any jurisdiction, that the rights of Prine, whatever they may be, were governed by the federal law, and that the state court did not have jurisdiction to entertain suit at all; second, that it was error to give a peremptory instruction if the state law applied.

In answer to the first objection that the state court did not have jurisdiction, and that the suit, if any action lay, must be brought in the federal court, we desire to say that in our judgment no federal question arises on this record. We have been referred to no statute bearing upon the subject, and no decision of any court sustaining this view.

We think, however, it was error to give the peremptory instruction. The rule in giving a peremptory instruction is that, conceding all the facts to be true which the testimony tends to establish, and drawing all inferences favorable to the other party which may be drawn logically from the testimony, there is no defense made, or nothing to be submitted to the jury.

It is insisted here that the *prima-facie* statute (section 1985, Code of 1906; section 1645 of Hemingway's Code) applies; that the railroad company failed to meet the burden and overcome the presumption of the statute. We think on the particular facts of this record that the jury could have found favorably to the railroad. We also think the jury could have found for the

plaintiff on the question of liability. There is a sharp conflict between the witnesses for the plaintiff and the defendant as to what the defendant did upon approaching the bridge. If we accept the view of the defendant, it was operating carefully, giving proper signals, keeping a sharp lookout, and doing all that could reasonably be expected under the circumstances. If we accept the view of the plaintiffs and the testimony of the witnesses favorable to the plaintiffs, the railroad company was negligent.

We think the question of liability should be submitted to the jury upon proper instructions.

*Reversed and remanded.*