## New Orleans & N. E. R. Co. *v.* Penton.*

(En Banc. March 31, 1924.)

[100 So. 521. No. 23831.]

1. Commerce. *Action governed by federal Employers' Liability Act where employee and railroad were engaged in interstate commerce.*

   Where brakeman and railroad by which he was employed were both engaged in interstate commerce at the time of the accident, the brakeman's action for injuries was governed by the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665).

2. Master and Servant. *Injured railroad employee must prove negligence under federal act.*

   In an action against a railroad under the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), for injuries to railroad employee, the employee was required to prove negligence by railroad, since in such case there is neither a statutory nor a common-law presumption of negligence.

3. Master and Servant. *Railroad not guarantor of safety under federal act.*

   A railroad is not liable under the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), for injuries to an employee unless negligent, since a railroad is not a guarantor of the safety of the place of work, but is required merely to exercise ordinary care and prudence to the end that the place in which the work is to be done may be reasonably safe.

4. Trial. *Facts which plaintiff's evidence tends to prove treated as true on defendant's motion for directed verdict.*

   On defendant's motion for a directed verdict the court must treat plaintiff's evidence as proving every material fact which it proves or tends to prove directly or inferentially.

5. Master and Servant. *Evidence of negligence as to brakeman struck by timber at lumber company's plant held insufficient for jury.*

   Brakeman, injured when timber slid off ramp adjoining spur track where the brakeman was engaged in switching cars, *held* not entitled to go to jury on question of negligence of railroad under the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), in view of failure to show that the timber was thrown down the ramp by an employee of the railroad or

that railroad could have anticipated that employee would be injured by reason of proximity of tracks to ramps or manner of construction of ramps or use which had been made thereof by the lumber company, it being inferable that the timber was thrown by an employee of the lumber company or some intermeddler.

HOLDEN and COOK, JJ., dissenting.

---

*Headnote 1.   Commerce, 12 C. J., section 52;  2.   Master & Servant, 26 Cyc, p. 1410;  3.   Master & Servant, 26 Cyc, p. 1102;  4.   Trial, 38 Cyc, p. 1586;  5.   Master & Servant, 26 Cyc, p. 1469.

APPEAL from circuit court of Pearl River county.

HON. J. Q. LANGSTON, Judge.

Suit by M. B. Penton against the New Orleans & Northeastern Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*Bozeman & Cameron, H. B. Monroe* and *M. M. Lemann,* for appellant.

I.   *Defendant entitled to peremptory instruction.* Our first proposition and the one to which our argument will be in great part devoted is that the court below erred in refusing to direct the jury to find for the defendant. This is based on a two-fold contention; namely (1) that plaintiff failed to prove his case, and, (2) that he assumed the risk of his injury.

*A. Plaintiff failed to make out his case.*

The pleadings admit that both the plaintiff and defendant were, at the time of the injury, engaged in work pertaining to interstate commerce, and that the case is governed by the Federal Employer's Liability Act (Act of April 22, 1909, chapter 149, 35 Statute 65, U. S. Compiled Statutes, 1916, sections 8657-8665) thus removing this question from controversy.

This being true, it is equally beyond controversy that negligence is the basis of plaintiff's suit, and must be affirmatively proven before he is entitled to recover. 1 Roberts' Federal Liabilities of Carriers, section 528; *Y. & M. V. R. R. Company* v. *McCaskell,* 118 Miss. 629, 79

So. 817.   On this subject generally, see the following authorities: 3 Elliott on Railroads, secs. 656-659; *N. O. & N. E. R. R. Co.* v. *Harris,* 247 U. S. 367, 38 Sup. Ct. Rep. 535, 62 L. Ed. 1167; *Parrot* v. *Wells,* 15 Wall, 524, 537, 21 L. Ed. 206, 211; *Patton* v. *T. & P. Ry. Co.,* 179 U. S. 658, 663, 45 L. Ed. 361, 21 Sup. Ct. Rep. 275; *Looney* v. *Metropolitan R. R. Co.,* 200 U. S. 480, 50 L. Ed. 564, 26 Sup. Ct. Rep. 303; 19 Am. Negligence Rpt. 627; *Southern Ry. Co.* v. *Bennett,* 233 U. S. 80, 58 L. Ed. 860, 34 Sup. Ct. Rep. 566, 10 N. C. C. A. 853; *Reese* v. *Philadelphia, etc., R. R. Co.,* 239 U. S. 463, 60 L. Ed. 483, 36 Sup. Ct. Rep. 134, 10 N. C. C. A. 926; *Illinois Central R. R. Co.* v. *Skaggs,* 240 U. S. 66, 60 L. Ed. 528, 36 Sup. Ct. Rep. 249; *Great Northern R. R. Co.* v. *Wiels,* 240 U. S. 444, 60 L. Ed. 732, 36 Sup. Ct. 406; *Southern Ry. Co.* v. *Gray,* 241 U. S. 333, 60 L. Ed. 1030, 36 Sup. Ct. Rep. 558; *C. & N. W. R. R. Co.* v. *Bower,* 241 U. S. 470, 60 L. Ed. 1107, 36 Sup. Ct. Rep. 624; *Pope* v. *R. R. Co.,* 98 Miss. 822, 54 So. 369; *A. & V. Ry. Co.* v. *White,* 106 Miss. 141, 63 So. 345; *Miss. Central R. R. Co.* v. *Bennett,* 111 Miss. 163, 71 So. 310.

No presumption of negligence on the part of the defendant is indulged, whether it arises from statute (*N. O. & N. E. R. R. Co.* v. *Harris, supra*) or from principles of the common law.   The doctrine of *res ipsa loquitur* cannot possibly apply to the facts of the case at bar.   *Patton* v. *Texas & Pacific Ry. Co.,* 179 U. S. 658, 45 L. Ed. 361, 21 Sup. Ct. Rep. 275; *Looney* v. *Metropolitan R. R. Co.,* 200 U. S. 480, 50 L. Ed. 564, 26 Sup. Ct. Rep. 303, 19 Am. Neg. Rep. 627; *Great Northern Ry. Company* v. *Wiells,* 240 U. S. 444, 60 L. Ed. 732.

From the above it is plain that the burden rests upon the plaintiff to prove that he was injured by reason of the negligence of the defendant proximately causing his injuries.

The concept, negligence, involves three essential elements: "A duty, or obligation, which the defendant is under to protect the plaintiff from injury, a failure to dis-

charge that duty, and the injury resulting from the failure." 20 R. C. L. 10. What, then, is the duty charged by the plaintiff as resting on the defendant, the breach of which is the predicate for the supposed right of action?

While the plaintiff does not specifically invoke the doctrine, that the master must furnish a safe place to work in his declaration, it is evident that it is that alleged duty which he relies on. This raises the question, therefore, does the duty of the master to furnish a safe place to work apply to the facts of this case?

It is our contention that the safe-place-to-work doctrine does not apply to the case before the court, because the conditions surrounding plaintiff's work were constantly changing and he was hurt while on the premises of another.

There is a line of Mississippi cases which we cite as authority for the proposition that the safe-place-to-work doctrine does not apply to the case before the court. It will be conceded by all, of course, that the decisions of the Federal court control: Roberts' Federal Liabilities of Carriers, secs. 731, 928, 933-6, 949, and 986, and authorities cited.

The decisions of this court, however, will be found persuasive, and, in the absence of some holding to the contrary by the Federal court, will control. *N. O. & N. E. R. R. Co.* v. *Williams,* 96 Miss. 373, 53 So. 619; *Cybur Lumber Company* v. *Erkhart,* 118 Miss. 401, 79 So. 235. See generally along this line: 1 Roberts' Federal Liabilities of Carriers, sec. 942; 3 Labatt's Master & Servant, secs. 2466-3140; *Int. Ship Building Co.* v. *Carter,* 83 So. 413; *Y. & M. V. R. R. Co.* v. *McCaskell,* 118 Miss. 629, 79 So. 817; *So. Ry. Co.* v. *Shook,* 43 So. 579; *Armour* v. *Hahan,* 111 U. S. 313, 28 L. Ed. 440; *Gulf, etc., R. R. Co.* v. *Jackson,* 65 Fed. 48, 12 C. C. A. 507; *Finlayson* v. *Utica Mining & Milling Co.,* 67 Fed. 507, 14 C. C. A. 492.

The other reason why the doctrine of a safe place to work has no application to the case before the court is that the plaintiff was, when injured, on the premises of another. There is no direct testimony that the actual

track belonged to the mill company. The testimony showed, without contradiction, that the ramps and all of the other equipment belonged to the saw mill company, but there is no evidence, one way or the other, directly establishing the ownership of the spur track (pp. 120, et seq.). As indicated, however, in the statement of facts, the plaintiff alleged in his declaration filed against the Southern Lumber and Timber Company, that the spur track was constructed and owned by the said lumber company. This would be presumed, in any event, in the absence of testimony, from the very location of the track—entirely on the premises of the lumber company.

The situation, then, involves the duty owed by a master with reference to a servant whom he has sent upon the premises of another. The general rule is that the master owes no duty with reference to those premises, unless he has knowledge of the existence of some defect, which he ought to advise the servant of. This rule is well stated in the case of *Wilson* v. *Valley Improvement Company*, 69 W. Va. 778, 73 S. E. 64; Am. Annotated Cases, 1913B, 791. For a further discussion of this rule, see: Labatt's Master & Servant, sec. 2827; *American Bridge Co.* v. *Bainum*, 146 Fed. 367, 76 C. C. A. 633; *Fairbanks, Morse & Co.* v. *Walker*, 160 Fed. 896, 88 C. C. A. 78; *Essen, et ux.* v. *City of Philadelphia*, 183 Fed. 414, 105 C. C. A. 648.

For either of the reasons above assigned, thereafter, we submit that the doctrine that a master is required to furnish the servant a reasonably safe place in which to work, has no application at all in the present case.

No evidence that place is unsafe—The plaintiff produced no evidence that the place to which he was directed to go and in which he was injured, was unsafe at all. The duty of the master to furnish a safe place to work has to do only with the premises themselves, and in the broad sense, with all of the instrumentalities with which the plaintiff is required to work. Having this in mind, it is plain that the plaintiff's "place" to work was not unsafe at all. His duties at the time were to assist in coupling

up and switching out certain cars which were standing on the track of the mill company. He was not injured in the performance of that duty. There was nothing the matter with any of the instrumentalities furnished him. The track on which he walked, as far as the evidence goes, was in good shape. There was nothing at all the matter with the ''place'' where plaintiff performed his work, nor with the instrumentalities furnished him for that purpose. There is no proof at all that the ramps were improperly constructed or were unsafe.

No proof of notice of unsafe condition to defendant.— Another necessary element of plaintiff's case is proof that the defendant had knowledge of the unsafe condition on which he relies. In other words, even if plaintiff had proven that the place he went into was maintained by the defendant and that it was in an unsafe condition he would, in order to recover, have to go one step further and prove that the defendant had knowledge of said unsafe condition. *Alabama & Vicksburg Railway Company* v. *White,* 106 Miss. 141, 63 So. 345; *Mississippi Central Railroad Co.* v. *Bennett,* 111 Miss. 163, 71 So. 310; *Hope* v. *Railroad Company,* 98 Miss. 822, 54 So. 369. Along the same line see the following list of authorities: *Ten Mile Lumber Company* v. *Garner,* 117 Miss. 814, 78 So. 776; *Lampton* v. *Adkins,* 92 So. 638; 1 Roberts' Federal Liabilities of Carriers, p. 944, and authorities cited; 26 Cyc. 1142-7; 18 Ruling Case Law, 547-550; *Commonwealth Steel Co.* v. *McCash,* 184 Red. 882, 107 C. C. A. 206; 11 Thompson on Negligence, par. 1053; IV Thompson on Negligence, par. 4362; VI Thompson on Negligence, pars. 4362-7528-7529; *Patton* v. *T. & P. R. R. Co.,* 179 U. S. 658, 45 L. Ed. 361; *Looney* v. *Metropolitan R. R. Co.,* 200 U. S. 480, 50 L. Ed. 564.

*B. Plaintiff Assumed Risk.*—The plaintiff, under the testimony in this case, assumed the risk of injury in the manner detailed by him.

The lumber ramps were there in the same condition for three years, during which he had made almost daily trips

past them on the northbound local. This situation, there-
fore, was permanent in its character and had no transi-
tory feature. It was, therefore, a part of the ordinary
environment in which, or near which, plaintiff performed
his duties.

The case nearest in point on the subject of assumption
of risk is that of *Southern Pacific Co.* v. *Berkshire,* 65 L.
Ed. 335, 254 U. S. 415.

*Gex, Waller & Morse,* for appellee.

As to the liability of the master, under the circum-
stances herein set out, it is hardly necessary to cite au-
thority on the proposition that the master owes a serv-
ant the duty to furnish him a reasonably safe place in
which to do his work, and failing therein, he is liable
for injury caused the servant, thereby. *Telegraph Com-
pany* v. *Woodham,* 99 Miss. 318; *Kneale* v. *Dukate,* 93
Miss. 210; *Knox* v. *Cotton Oil Company,* 99 Miss. 888;
*Edwards* v. *Lbr. Co.,* 113 Miss. 378; *Benton* v. *Miss. Lbr.
Co.,* 118 Miss. 558.

Now, we recognize, that under the Federal Employers'
Liability Act, an employee assumes the risk obvious and
incidental to the work he is employed to perform. That
is the general rule, but when as in this case, he was do-
ing the work as directed to be done according to the rules
of the company, and under the direction of a superior
officer, the doctrine of assumption of risk would not
apply. *Railroad Company* v. *Guion,* 109 Miss. 187.

But we maintain that even if the assumption of risk
applies to the facts of this case, that the risk which
caused the injury was not one assumed as an incident to
the employment. *Y. & M. V. Ry. Co.* v. *Dees,* 121 Miss.
439.

But we maintain that even if the assumption of risk
applies to the facts of this case, that the risk which caused
the injury was not one assumed as an incident to the em-
ployment. *Y. & M. V. R. R. Co.* v. *Dees,* 121 Miss. 439.

The rule as to assumption of risk as adopted by the supreme court of the United States, is ably set out in the case of *Gila Valley G. & N. R. Co.* v. *Hall*, 232 U. S. 94, 58 L. Ed. 521. See, also, *Chicago, R. I. & P. Co.* and *Carney* v. *Ward*, 252 U. S. 18, 64 L. Ed. 430.

We have cited authorities thus far on the general principles of law, and practically all in cases similar to the one at bar. We might well rest this case, however, on the authority of *Kanawha & M. R. Co.* v. *Kerse*, 239 U. S. 576, 60 L. Ed. 499.

Argued orally by *Ben F. Cameron* and *A. S. Bozeman*, for appellant and *W. J. Gex*, for appellee.

Anderson, J., delivered the opinion of the court.

Appellee, M. B. Penton, sued appellant, New Orleans & Northeastern Railroad Company, in the circuit court of Pearl River county for damages for a personal injury received by him while engaged about his duties as brakeman employed on one of appellant's local freight trains, and recovered a judgment from which appellant prosecutes this appeal. The ground of liability upon which appellee relied, and upon which it is sought to sustain the judgment in his favor in this court, is that appellant breached its duty to furnish him a reasonably safe place in which to perform the duties of his employment and in ordering him to do his work in such unsafe place. Both appellant and appellee, at the time of appellee's injury, were engaged in interstate commerce; therefore it is unquestioned that this case is governed by the federal Employers' Liability Act (U. S. Compiled Statutes, sections 8657-8665).

Appellee was engaged at the time of his injury in switching cars in the plant of Southern Lumber & Timber Company at Hillsdale in this state. While so engaged a large piece of timber was thrown, presumably by some employee of the said lumber company, onto a

ramp adjoining the spur track on which appellee was at the time engaged in his employment, and in some way the timber slid off the ramp, falling on appellee's head.

Appellant defended on the ground that it was guilty of no negligence which caused appellee's injury, that the place at which appellee was engaged in his employment was a reasonably safe place for the performance of his duties, and, furthermore, that if the place was in fact unsafe, appellee had full knowledge thereof and assumed the risk incident thereto.

At the conclusion of appellee's evidence, appellant, conceiving that no case of liability had been made out, moved the court to exclude appellee's evidence and direct a verdict for appellant. This motion was overruled. The case thereupon went to the jury under the instructions of the court and resulted in a verdict and judgment for appellee for thirty thousand dollars.

Appellant contends that a verdict should have been directed in its favor on several grounds. In view of the conclusion the court has reached, it is only necessary to discuss one of those grounds, namely, that there was not sufficient evidence to go to the jury on the question of appellant's negligence.

Under the federal Employers' Liability Act, there is in this case neither statutory nor common-law presumption of negligence upon which appellee can rely. Negligence is the basis of liability under the act, and in the absence of negligence on the part of the railroad company or its employees, the railroad company is not a guarantor of the safety of the place of work; the extent of its duty is to see that ordinary care and prudence are exercised to the end that the place in which the work is to be done may be reasonably safe; the injured employee must prove the existence of the defect complained of; he must show that the place was unsafe as the result of a negligent failure of the railroad company to do its duty in respect thereto. Roberts' Federal Liabilities of Car-

riers, vol. 1, section 528; *Y. & M. V. R. R. Co.* v. *Mc-Caskell,* 118 Miss. 629, 79 So. 817.

Treating appellee's evidence as proving every material fact which it proves or tends to prove, directly or inferentially, as should be done in determining whether appellant was entitled to a directed verdict, the following case was made out: As stated, there was only the evidence introduced on behalf of appellee; appellant offered none, and there are no material conflicts in the evidence. Appellee had been engaged in the employ of appellant at intervals for about eighteen years. The most of that time he had spent on work of the character of that in which he was engaged when injured. At the time of his injury he was braking on one of appellant's local freight trains which switched all the lumber mill plants along the line of its route; this local freight train was at the time of appellee's injury switching the plant of the Southern Lumber & Timber Company. Most of the train had been left on the main line. The engine pulling the train backed south into the spur track which led into and served the east side of the said lumber mill. Having completed its work on that side, it moved several cars over on the track leading along the track serving the said lumber plant on the west side, being the track where appellee was injured. The engine was backing south into this spur track pushing five or six cars behind it. The conductor in charge and appellee left the caboose attached to the train where they had been riding, and walked over to where a dirt road crossed the track on which the accident happened, while the rest of the train crew accompanied the engine and cut of cars. This crossing was several hundred feet north of the point where appellee was injured and north of the plant of the lumber company. While appellee and his conductor were at this crossing awaiting the approach of the cut of cars, appellee asked the conductor what was to be done in the way of switching the lumber mill, in response to which the conductor showed him a list of cars

to be switched at that point and directed him to go and adjust the couplers and pull out the loaded cars shown in the list. Appellee on foot preceded the cut of five or six cars which were backed onto this spur track and had adjusted the knuckles on one or two cars before he reached the point where he was injured. He was standing, according to his own testimony, with his hand on the ladder on the end of a car. The approaching cut of cars was something like one hundred fifty feet from him. He was standing between the ramps of said lumber company and the railroad track. Suddenly without warning a large piece of timber came hurtling down the ramps and struck appellee on the head, causing the injuries for which he sued; neither appellee nor any one else who saw it knew where the piece of timber came from. It is not shown that any of appellant's employees threw it down on the ramps, the presumption from the evidence being that it was either thrown down by some employee of the lumber company or some intermeddler.

Bordering on the side of this mill plant there were a series of lumber ramps placed there and owned by the lumber company for loading lumber onto appellant's cars. As these ramps approached the railroad track, there was a decline of from six to ten per cent. The ramps were about thirty feet long with a total slope of something like two feet in that distance. They were constructed of large timbers, six by eight inches. The skids or stringers on which the lumber rested were laid at right angles to the railroad track and rested on caps or sills running parallel with the railroad track, which in turn were supported by upright timbers. These ramps were constructed from eight to ten feet above the level of the railroad track at the lower end and about two feet higher at the upper end. At the upper ends of these ramps and substantially equidistant from the two spur tracks which served the plant of the said lumber company on the east and the west sides and parallel with them, there was a "deal track" which was part of the

equipment of the lumber company on which the dollies or deal cars loaded with lumber were hauled to points along these ramps and unloaded thereon and in turn loaded therefrom into appellant's cars. The lumber company would unload the lumber from these dolly cars onto the ramps pushing or sliding the pieces of timber down toward the lower ends so as to place them in convenient position for loading into appellant's cars.

The method provided by the lumber company according to the evidence of appellee's witness Netterville, for stopping the lumber at the lower ends of the ramps, was to place pieces of lumber in an upright position behind the caps or sills of the ramps. This method, he testified, was effective in keeping the lumber from falling off of the ramps, and that the lumber company made it a practice to place these stops in position before any lumber was put on the ramps. This evidence was uncontradicted.

Appellee's case comes to the proposition that the place he was furnished to perform his duties was unsafe because the lumber company had failed to provide stanchions for its ramps, resulting in the piece of timber that struck appellee rolling off the ramps, which condition appellee argues appellant knew, or could have known by reasonable care.

It is doubtless true that if stanchions had been in position at the foot of the ramps where appellee was injured, the piece of timber which was thrown out onto the ramps and fell off and caused his injury would have been caught by the stanchions and held in position, and therefore would not have fallen off and injured appellee. Appellee's evidence showed that an effective method of constructing ramps in a lumber mill plant like the one here involved was to provide in their structure for stanchions to catch the lumber when thrown on them, and that no such provision was made in the construction of these ramps. However, appellee's evidence also showed that the method adopted by this lumber company of using pieces of timber placed inside of the stringers or

caps of the ramps was equally effective with the other method.

Appellee as a brakeman for appellant for some years before his injury was engaged on this local freight train, which did the switching at the plant of said lumber company; it was everyday business with him. Appellant neither owned nor controlled the lumber company. There was no evidence that such an occurrence as took place when appellee was injured had ever happened before; there was no evidence that the employees of the lumber company or any one else had ever on any other occasion thrown any lumber onto these ramps without the stanchions being in place; there was not a particle of evidence tending to show that appellant had any reason to believe either from the manner of the construction of the ramps or their proximity to its tracks, or the use which had been made of them by the lumber company in the past, that the injury which did occur or in fact any injury whatever might reasonably be expected to occur in the operation of said mill plant. It was simply a situation which resulted in an injury to one of appellant's employees which appellant by no reasonable human foresight could have anticipated. The place furnished appellee by appellant was perfectly safe except for the intervention of an independent unforeseen agency, and under the law appellant is not responsible for the results.

We are of the opinion, therefore, that the court should have directed a verdict for appellant.

Reversed, and judgment here for appellant.

*Reversed.*

Holden, J. (dissenting).

I think the question of the negligence of the railroad company in failing to furnish appellee a reasonably safe place in which to work was properly submitted for determination by the jury in the lower court.

As I view the record, the case, in short, is this: The lumber ramps adjacent to the railroad track had been inspected and accepted by the railroad company, and therefore the conditions were known to it. The ramps were commonly used for the purpose of sliding timber from the platform at the top to the bottom on the skids to be loaded on cars. The lumber and timber was customarily piled at the top of the ramps as it was unloaded from dolly cars by employees of the mill; then it was usual and customary for the lumber to be precipitated upon the skids, and it would slide to the bottom and off onto a car or the railroad track on the ground unless stops at the bottom of the ramps were there and properly adjusted. It is shown in this case that the ramps were improperly and defectively constructed in that no stops were provided for at the bottom, which was the proper and safe way to construct the ramps.

The railroad company knew, or ought to have known, that in the common use of the ramps lumber would probably or likely be precipitated at any time from the top onto the ramps by employees of the mill or otherwise, and that the timber would slide down the ramps to the track on the ground and injure any employees there engaged in switching cars. And this is exactly what happened in this case.

The appellee was engaged in his duties on the track below, where he had been ordered by the conductor to go, and while thus engaged in this unsafe place the timber slid from the ramps, because there were no stops at the bottom, and struck appellee in the back of the head, permanently incapacitating and injuring him for life.

Appellee did not know at the time, as shown by the undisputed evidence, that the stops had not been provided for these ramps, because the lower floor of the ramps was higher than his head while he was upon the track and he could not see the upper surface of the floor; and of course, under these circumstances, he did not as-

sume the risk of this danger which was due to the fact that the ramps had been improperly constructed.

It is well within the province of the jury to decide that the railroad company might have reasonably anticipated that timbers would slide down the ramps and injure employees below at any time, because there were no stops provided in the ramps at the bottom to prevent the timber from going over and onto the track below.

Lumber stacked at the top of the ramps might for many causes be precipitated down the ramps and onto employees working on the track on the ground below unless there were stops at the bottom to prevent it. This was an unsafe situation of which the railroad company had ample notice, and this deplorable injury would not have occurred had the ramps been properly constructed with stops at the bottom to prevent the timber from sliding to the track below.

I do not think it necessary to cite authorities to sustain this position, though I shall name one leading case which supports the view I have presented, and that is the case of *Kanawha & M. R. Co.* v. *Kerse,* 239 U. S. 576, 36 Sup. Ct. 174, 60 L. Ed. 449.

Cook, J., concurs in this opinion.