HOWELL *v.* VIENER.

(Division B. Nov. 1, 1937. Suggestion of Error Overruled Dec. 13, 1937.)

[176 So. 731. No. 32834.]

W. A. Geisenberger, of Natchez, for appellant.

**Engle & Laub**, of Natchez, for appellee.

Argued orally by **W. A. Geisenberger**, for appellant, and by **S. B. Laub**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action in the circuit court of Adams county against appellee to recover damages for an alleged false arrest of appellant, claimed by him to have been procured by appellee. There was a trial and directed verdict and judgment in favor of appellee, from which appellant prosecutes this appeal.

We are of the opinion that the court erred; that the question of liability was one for the jury. In reaching that conclusion we accept as true all the material evi-

dence and reasonable inferences therefrom supporting appellant's case. In doing so, we follow the rule laid down in numerous decisions of this court, among which are: Gulf & S. I. R. R. Co. v. Prine, 118 Miss. 90, 79 So. 62; New Orleans & N. E. R. R. Co. v. Penton, 135 Miss. 571, 100 So. 521; New Orleans & N. E. R. R. Co. v. Jackson, 140 Miss 375, 105 So. 770; Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613.

A sister-in-law of appellant had died in Centerville in this state, his wife was there critically ill. His home was in Monroe, La. Early in the morning of September 16, 1935, he left Monroe for Centerville, by way of Natchez, to attend the funeral of his sister-in-law and be with his sick wife. Harvey Gant, a negro employee of appellant, drove the car in which he made the trip. They arrived in Natchez about 7:30 o'clock that morning and parked the car on Main street. Their stop in Natchez was to allow appellant time to purchase a hat and have breakfast at a restaurant, and the chauffeur time to purchase a pair of shoes for himself. Appellant gave Gant a $5 bill with which to purchase the shoes. They parted, appellant purchased a hat and ate breakfast; the chauffeur went to a store operated by appellee's wife and there purchased a pair of shoes, to pay for which he handed her the $5 bill given him by appellant. The price of the shoes was $2.98. Appellee's wife did not have the change in her store. A short time before that a federal secret service agent had been in Natchez investigating the circulation of counterfeit $5 bills in that city and surrounding territory. The counterfeit bills had a certain serial number, and the federal agent had left this number with numerous merchants and business men in Natchez as a part of the means of detecting the counterfeiter. He left the number with appellee and also with a drug store in the same block in which his wife's store was situated. The wife went to this drug store to get change for the $5 bill. Gant had already put the shoes on. Those in charge of the drug store com-

pared the $5 bill with the serial number of the counterfeit bills and found that they were the same. She returned to her store, told Gant that it was a counterfeit bill, and made him pull the shoes off. About that time appellee entered the store and his wife told him what had happened. He had the serial number of the counterfeit bills and compared it with the bill Gant had tendered and found that they were the same. He returned the bill to Gant but before doing so tore it slightly; thereupon Gant left the store and appellee followed him to appellant's car. He first called on a policeman to arrest him and charged him with being a counterfeiter. Appellant and Gant got in the car to leave. Appellee then called on the policeman to arrest both of them as counterfeiters. This was done and they were taken to police headquarters two or three blocks away. Appellee, therefore, stands as if he had made the arrest himself. Bacon v. Bacon, 76 Miss. 458, 24 So. 968. Before the arrest Gant had returned the $5 bill to appellant. Appellant turned it over to the policeman making the arrest. When they reached police headquarters someone authorized to do so took the bill to a near-by bank and it was examined and found to be a genuine bill. It was also ascertained at police headquarters, and at the bank, that it had a different serial number from the counterfeit bills being circulated. The evidence, therefore, was squarely in conflict as to whether the bill had the counterfeit serial number or a different one, and, under the rule above stated, the evidence on behalf of appellant must be taken as true. So viewing it, the bill not only did not have the serial number of the counterfeit bills but had another one and was a genuine bill.

Appellant and appellee were strangers. There was no evidence whatever that appellee was prompted in what he did by self interest or malice. On the contrary, the evidence showed without dispute that he was prompted alone by the public good. Section 1227, Code of 1930, authorizes among other things a private person

to arrest without a warrant a person who has committed a felony, though not in his presence. There must be probable cause however to believe that a felony has been committed, and that the person arrested is the guilty one. And where, as here, the party suing makes out a prima facie case, the burden is on the defendant to show probable cause. Harris v. Sims, 155 Miss. 207, 124 So. 325. There was a conflict in the testimony as to probable cause; that for appellant, if true, showed that the bill in question was genuine, not counterfeit, while that for appellee, if true, fell short of showing that it was counterfeit, it bore only the counterfeit serial number. It is inconceivable that a counterfeit bill would bear a serial number different from a genuine bill.

Reversed and remanded.